IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RILEY, THOMAS PEAKS, TIMOTHY CAMPBELL, NATHANIEL PHILLIPS, and DESLYN WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>NTAN, LLC, d/b/a ACTION NISSAN,<br><br>Defendant. | NO. 3:21-cv-00314<br><br>JUDGE RICHARDSON |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is "Defendant's Motion to Dismiss, or in the Alternative to Stay the Proceedings, and Compel Arbitration for Plaintiffs John Riley, Timothy Campbell, and Nathaniel Phillips" (Doc. No. 23, "Motion"). Plaintiffs responded. (Doc. No. 27). Defendant replied. (Doc. No. 28). Plaintiffs also filed a "Notice of Filing New Authority"[1] (Doc. No. 29, "Notice").[2]

---

[1] The Court does not find the authority referenced by Plaintiffs in their Notice, *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), to be probative of any relevant issues or otherwise helpful to the Court's resolution of the Motion. Without belaboring the point, the Court notes briefly that this is because the Court herein does not even reach the issue of "prejudice" to Plaintiffs, let alone require Plaintiffs to demonstrate "prejudice" in order to show that Defendant waived, forfeited, abandoned, or otherwise relinquished its right to stay the case or compel arbitration by virtue of its litigation conduct or its delay in filing a motion to stay or compel. Plaintiffs' fail to make this showing irrespective of whether they have shown "prejudice."

[2] Each of Plaintiffs' two filings are styled as being filed on behalf of all Plaintiffs, which is understandable, especially considering that all Plaintiffs have the same counsel. Therefore, the Court refers to the opponents of the Motion as "[all] Plaintiffs" even though the Motion implicates only a subset of Plaintiffs, *i.e.*, the Arbitration Plaintiffs as identified herein.

## BACKGROUND

Plaintiffs are five former employees of Defendant NTAN, LLC, d/b/a Action Nissan ("Action Nissan"). (Doc. No. 1 at ¶ 1, 5). Defendant is an automobile dealership located in Nashville, Tennessee. (*Id*. at ¶ 5). Plaintiffs bring claims of race discrimination, a racially hostile work environment, and retaliation under Section 1981 related to acts of alleged discrimination and retaliation that occurred during Plaintiffs' employment with Defendant. (*Id*. at ¶¶ 11–17). Defendant seeks to compel arbitration as to three of the five Plaintiffs—John Riley, Timothy Campbell, and Nathaniel Phillips ("Arbitration Plaintiffs")[3]—who each executed an arbitration agreement with Defendant (Doc. No. 24-1 at 6–9, "Arbitration Agreement").[4] The Arbitration Agreement provides in pertinent part that "[e]xcept for certain Excluded Claims described below, you agree that any legal claim or dispute that you may have against [Defendant] arising out of your application for employment, your employment, or the separation thereof **("Covered Claim")** will be resolved by final and binding arbitration."

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This section of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright*

---

[3] To avoid confusion, the Court refers to John Riley, Timothy Campbell, and Nathaniel Phillips as the "Arbitration Plaintiffs" and the remaining Plaintiffs as the "Non-Arbitration Plaintiffs." Collectively, the Court refers to the Arbitration and Non-Arbitration Plaintiffs as "Plaintiffs."

[4] As noted by the human resources director for the parent company of Defendant, each Plaintiff executed (separately) the same arbitration agreement, *i.e.,* the Arbitration Agreement as identified above. (Doc. No. 24-1 at 1–3).

*v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal citation and quotations omitted).

Under the FAA, if a party establishes the existence of a valid agreement to arbitrate, the district court must grant the party's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). Furthermore, "courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). Therefore, any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). However, while the courts must respect "the liberal federal policy favoring arbitration agreements . . . arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Seawright*, 507 F.3d at 972 (internal citation and quotations omitted). Because arbitration agreements are fundamentally contracts, the enforceability of a purported agreement to arbitrate is evaluated according to applicable state contract law. *Id*.

When considering a motion to dismiss and compel arbitration under the FAA, a court has as many as four tasks—one or more of which the court may not need reach in a particular case, depending on the case-specific outcome of the preceding task(s):

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714 (citing *Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). Notably, only the first three steps relate to whether arbitration should be

compelled as to at least some claims; the fourth relates to what to do with non-arbitrable claims when other claims are arbitrable[5].

"In evaluating motions to compel arbitration, 'courts treat the facts as they would in ruling on a summary judgment.'" *Yaroma*, 130 F. Supp. 3d at 1062 (quoting *Kovac*, 930 F. Supp. 2d at 864). "Therefore, the party opposing arbitration bears the burden of 'showing a genuine issue of material fact as to the validity of the agreement to arbitrate.'" *Id*. (citing *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). Thus, the court views "all facts and inferences drawn therefrom in the light most favorable" to the party opposing arbitration and "determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id*.; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (stating that the party challenging arbitration has the burden of proving that the claims at issue are not arbitrable).

## DISCUSSION

### I. ARBITRABILITY OF CLAIMS OF ARBITRATION PLAINTIFFS

Plaintiffs do not appear to dispute that the Arbitration Plaintiffs entered into binding arbitration agreements with Defendant, and Plaintiffs acknowledge that Defendant "provided Plaintiffs electronically signed arbitration agreements for [the Arbitration Plaintiffs]." (Doc. No. 27 at 2). In fact, in their Response, Plaintiffs make no argument as to whether the arbitration agreements between the Arbitration Plaintiffs and Defendant are valid and enforceable; thus, Plaintiffs (who bear the burden as the party opposing arbitration) have not shown a genuine issue of material fact as to the first of the four steps, i.e., the existence of an agreement to arbitrate. They

---

[5] By "arbitrable" and "non-arbitrable," the Court does not mean what the words facially suggest, *i.e.*, "capable of being arbitrated" and "not capable of being arbitrated," respectively. Instead, the Court means "subject to compelled arbitration" and "not subject to compelled arbitration," respectively.

likewise have not shown the existence of a genuine issue of material fact as to the second step, *i.e.,* the scope of the Arbitration Agreement, and it is plain that the Arbitration Plaintiffs' claims are Covered Claims and thus fall within the scope of the agreement to arbitrate as set forth in the Arbitration Agreement. And with respect to the third step, Plaintiffs very understandably do not assert that Congress intended such claims to be non-arbitrable. Thus, Plaintiffs have not, at any of the three relevant steps, raised a genuine issue of material fact as to whether the Arbitration Plaintiffs' claims are not subject to arbitration.

Instead, Plaintiffs argue only that the Motion should be denied because Defendant violated certain discovery deadlines and that the Motion is "untimely." (*Id*. at 3–4). But the Motion was not untimely. The Magistrate Judge ordered that any motion to compel arbitration be filed by February 22, 2022 (Doc. No. 22), and Defendant complied by filing the present Motion on that date. Second, the alleged discovery deficiencies identified by Plaintiffs are of no assistance to Plaintiff in opposing the Motion; Plaintiff has not explained why—or cited any authority suggesting that—these kinds of discovery deficiencies can constitute grounds for denying a motion to compel, and the Sixth Circuit's three specified steps conspicuously omit any role for such deficiencies in the analysis of a motion to compel arbitration.

Plaintiffs thus have not demonstrated a genuine issue of material fact as to the validity or applicability of the arbitration agreement here. The Court finds that the arbitration agreement is valid and enforceable, and the Court must grant the Motion and compel the Arbitration Plaintiffs to arbitrate their claims. *Glazer*, 394 F.3d at 451.

II.   DISPOSITION OF CLAIMS IN THIS COURT

Finally, the Court must address the fourth step from *Stout*—whether to stay the remainder of the proceedings pending arbitration. In context, it is clear that in referring to the "remainder of the proceedings," *Stout* was referring to the *non-arbitrable* claims. *Stout*, 228 F.3d at 714 ("[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."). This step is applicable here, even though all claims of the Arbitration Plaintiffs are arbitrable, because the claims of the Non-Arbitration Plaintiffs are not. *Stout*'s fourth step mandates an inquiry into what to do with these non-arbitrable claims.

As to that question, Defendant assumes that the non-arbitrable claims will continue unabated in this Court (Doc. No. 24 at 13) ("[T]he two plaintiffs for whom arbitration has not been compelled will presumably continue this action in this Court."). Defendant also addresses something not strictly within the scope of the question raised by *Stout*: what this Court should do with the claims that *are* arbitrable. This is a legitimate question—albeit one that should not have been raised to the exclusion of the question of what to do with the claims that are not arbitrable— because this Court has the option of either dismissing or staying the arbitrable claims (as they exist *in this Court*) while the claims proceed *in arbitration*. Defendant asks the Court to dismiss the Arbitration Plaintiffs' claims in this Court simultaneous with sending those claims to arbitration (Doc. No. 24 at 12–13); alternatively, Defendant asks for the proceedings as to the Arbitration Plaintiffs be stayed while their claims are arbitrated (Doc. No. 24 at 1).[6] Plaintiffs respond by

---

[6] It is not entirely clear from Defendant's motion whether Defendant's alternative request is to stay the proceedings as to the Arbitration Plaintiffs or to stay the entire proceeding, including the claims of the Non-Arbitrating Plaintiffs. On the one hand, Defendant phrases the alternative request as one to "stay these proceedings," which seems to refer to staying *all* claims and not just the arbitrable claims. (Doc. No. 24 at 1) ("or, alternatively, to stay these proceedings pursuant to the Federal Arbitration Act…"). The Court,

effectively addressing both what to do with the claims that are arbitrable and the claims that are not arbitrable. Specifically, they request that the Court "stay the proceedings with respect to [the Arbitration Plaintiffs], and only them, pending the outcome of any arbitration . . . ." In so doing, they impliedly request that the Court allow the Non-Arbitration-Plaintiffs' claims to go forward (rather than being either stayed or dismissed) while the arbitration takes places. (Doc. No. 27 at 4).

Although the parties are not particularly attentive to the distinction, as suggested above, the Court has two discrete issues to resolve. First, the Court must decide whether to dismiss or stay the claims of the Arbitration Plaintiffs while arbitration of those claims occurs. Second, the Court must decide whether to stay the remainder of the proceedings, meaning the claims of the Non-Arbitration Plaintiffs.

The FAA states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, *the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration."

9 U.S.C. § 3 (emphasis added). At the outset, the Court recognizes that 9 U.S.C. § 3 does not stand as a model of clarity for statutory drafting. Unsurprisingly, the provision's inartful drafting has created inconsistent interpretations among the courts. As discussed further below with respect to the Court's treatment of the non-arbitrable claims, it is plausible that 9 U.S.C. § 3 requires a court

---

however, construes Defendant's motion to alternatively request a stay only of the Arbitration Plaintiffs' claims, given Defendant's above-referenced statement that "[t]he two plaintiffs for whom arbitration has not been compelled will presumably continue this action in this Court." (Doc. No. 24 at 13).

to stay the entirety of the proceeding (*i.e.,* stay even non-arbitrable claims), even when fewer than all claims are referred to arbitration. The Court, however, does not need to address this interpretation when determining what to do with the arbitrable claims in this case. With respect to the arbitrable claims, it is sufficient to say that courts have treated 9 U.S.C. § 3 to require, at a minimum, a stay of arbitrable claims (not necessarily to the exclusion of staying non-arbitrable claims) upon application of one of the parties when fewer than all claims are referred to arbitration. *See Shearson/American Exp.*, *Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Act also provides that a court must stay its proceedings if it is satisfied that an issue before it is arbitrable under the agreement") (citing 9 U.S.C. § 3); *Highlands Wellmont Health Network, Inc v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) ("If a court determines that a claim is covered by an arbitration clause, it must stay the proceedings until the arbitration process is complete") (citing 9 U.S.C. § 3); *DeOrnellas v. Aspen Square Management, Inc.*, 295 Supp. 2d 753, 759 (E.D. Mich. 2003) ("The FAA requires a federal court to stay an action when an issue in the proceeding is referable to arbitration…"); *see also Jones v. U-Haul Co. of Massachusetts and Ohio, Inc.*, 16 F. Supp. 3d 922 (S.D. Ohio 2014); *Forsyth v. HP Inc.*, 2018 WL 732722 (N.D. Cal. Feb. 6, 2018) ("A motion to stay, therefore, is mandatory and must be granted as to all matters within the scope of the arbitration agreement…"); *In re Wholesale Grocery Products Antitrust Litigation*, 2011 WL 13136279 (D. Minn. Dec. 13, 2011) ("The Federal Arbitration Act generally requires a district court to stay rather than dismiss an action pending an arbitration…").[7]

---

[7] As the Court has observed above, the case law interpreting 9 U.S.C. § 3 is inconsistent. Some cases suggest that 9 U.S.C. § 3 requires a court to stay the entire proceeding, even when fewer than all claims are referred to arbitration. Conversely, other cases appear quite clear that only the claims within the scope of the arbitration agreement must be stayed. With regards to treatment of the arbitrable claims in this case, the Court cites these cases to illustrate that courts agree that at a minimum, 9 U.S.C. § 3 requires a stay of the arbitrable claims when fewer than all claims are referred to arbitration.

Although 9 U.S.C. § 3 ordinarily mandates a stay of arbitrable claims, there is a judicially created exception that permits courts to dismiss, rather than stay, an action[8] when "all claims" or ("all issues") before the court are referred to arbitration. *See e.g.*, *5th of July, LLC v. Thomas*, 2020 WL 5983111 (M.D. Tenn. Oct. 8, 2020) ("whether to stay or dismiss a case in *which all claims have been referred to arbitration is a matter of discretion*") (emphasis added) (citing *Ozomoor v. T-Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009)); *Morrison v. Circuit City Stores, Inc.*, 70 F. Supp. 2d 815, 828–829 (S.D. Ohio 1999) ("[W]e note that a court may dismiss a lawsuit when it determines that all of the issues involved are subject to arbitration"); *In re Wholesale Grocery Products Antitrust Litigation*, 2011 WL 13136279 at *2 ("A judicially-created exception exists that allows a district court to dismiss, rather than stay, a case *when all of the issues before the court are arbitrable.*") (internal quotations omitted) (emphasis added). Defendant argues that this judicially created exception applies to this case and that therefore the arbitrable claims (but not the non-arbitrable claims) should be dismissed. (Doc. No. 24 at 12). The Court disagrees, because Defendant has not established that this exception may be invoked by the Court to dismiss anything less than an entire action, *i.e.*, fewer than *all* claims in an action.

As the party asserting the exception to a generally applicable rule, Defendant needs to show the Court that the exception actually can be invoked to do what Defendant claims it can do in the particular circumstances. Here, that means Defendant needs to show the Court that the exception can be used to dismiss less than the entire action—*i.e.,* the (arbitrable) claims of the Arbitration Plaintiffs but not the (non-arbitrable) claims of the Non-Arbitration Plaintiffs. But Defendant does not even specifically assert that this is the case. Instead, Defendant claims only that "when all of a plaintiffs' claims in a suit will be referred to arbitration, the Sixth Circuit has held that the case

---

[8] When the Court refers to "an action" or "proceeding," it means all claims of all plaintiffs in a particular lawsuit.

may be dismissed rather than stayed." (*Id.*). But to say that "the case may be dismissed" when "all of *a*" plaintiff's claims are arbitrable is *not* to say that anything less than the entire case can be dismissed—and it certainly is not to say that "all of *a* plaintiff's claims," but fewer than all claims of all plaintiffs, may be dismissed when all of *that* plaintiff's claims are arbitrable, but *not* all claims of the co-plaintiffs are arbitrable. And Defendant's recap of relevant case law, quoted verbatim just below, does not suggest that anything less than an entire case can ever be dismissed based on the judicially created exception invoked by Defendant:

> *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (affirming the district court's order compelling arbitration and dismissing the complaint when all claims were referred to arbitration); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (noting that the "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"). Numerous district courts in this circuit have dismissed actions where all claims are subject to arbitration. See, e.g., *Doe v. Déjà Vu Consulting Inc.*, 2017 U.S. Dist. LEXIS 142019, at *57 (M.D. Tenn. Sep. 1, 2017); *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 728–29 (W.D. Ky. 2014) (collecting cases).

(Doc. No. 24 at 12–13). The language quoted above from *5th of July, LLC, Morrison*, and *Wholesale Grocery Products Antitrust Litigation* is to like effect, suggesting that the kind of dismissal authorized pursuant to this exception is dismissal of the entire action, or "all issues before the court," and not dismissal of merely some claims (or "issues") while other claims ("or issues") are not dismissed but rather are either stayed or allowed to proceed.

It makes sense that dismissal of less than the entire case would not be authorized by this judicially created exception. The exception is, after all, an *exception* to a generally applicable rule, and there are good reasons to limit the exception to easily identifiable, unambiguous, and carefully circumscribed circumstances, *i.e.*, when *all* claims (of all plaintiffs, if there is more than one plaintiff) are arbitrable. For this reason, the Court finds, alternatively (in the event that it did have discretion to dismiss only the Arbitration Plaintiffs' claims) that it would not exercise its discretion

to dismiss the Arbitration Plaintiffs' claims while doing something other than dismissal with the Non-Arbitration Plaintiffs' claims.

True, the Court could consider the possibility of dismissing the entire instant action, arbitrable and non-arbitrable claims alike. One suspects that this was never the idea behind the judicially creation exception that allows dismissal of an entire action; one suspects that the idea was to authorize dismissal (of the entire action) only in the straightforward case where *all* claims in the action were arbitrable. And it may be that the exception is not properly construed to allow the Court to dismiss an entire action where the action includes both arbitrable and non-arbitrable claims. But in any event, the Court need not decide whether it could grant a request to dismiss the entire action under such circumstances, because Defendant does not ask the Court to dismiss the entire action; instead, as noted above, Defendant does not contemplate the dismissal of the Non-Arbitration Plaintiffs' claims and asks the Court only to "dismiss the complaints of the arbitration plaintiffs." (Doc. No. 24 at 12).

Since the Court will not be dismissing the entire action, it needs to decide what to do with the claims in this Court of (i) the Arbitration Plaintiffs while their claims are being arbitrated, and (ii) the claims of the Non-Arbitration Plaintiffs. There appears to be no reason why the two categories of claims cannot be treated separately. As for the first category, the answer is clear: by statute, the claims of the Arbitration Plaintiffs are to be stayed while they are being arbitrated

As for the Non-Arbitration Plaintiffs' claims, the question is somewhat more involved. The options for the Court as to those claims are to either (i) stay them or (ii) allow them to proceed even while the arbitrable claims are being arbitrated. As noted above in a footnote, Defendant presumes that these claims will proceed in this Court. But as further noted above, there is a colorable argument that 9 U.S.C. § 3 requires a Court to stay the entire proceeding, even when

fewer than all claims are referred to arbitration. The provision states that the court, upon satisfaction that "any issue" is referable to arbitration, "shall on application of one of the parties stay the trial of *the action*…" 9 U.S.C. § 3 (emphasis added). Indeed, at least one other court has recognized that there is some "superficial appeal" to construing the provision's reference to "the action" as requiring a stay of the entire proceeding, arbitrable and non-arbitrable claims alike. *See Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 563 F. Supp. 2d 325 (D.R.I. 2008). The court in *Narragansett* nevertheless rejected this reading, reasoning that such an interpretation "runs counter to the overall purpose of the FAA" because it improperly elevates arbitration agreements above those contracts without arbitration clauses. *See id.* at 331. The court further noted that other circuits have held that the district court enjoys discretion in determining whether to stay the entirety of a proceeding while some, but not all, claims are arbitrated. *See id.* Although it is unclear whether the circuit-court opinions cited in *Narragansett* directly addressed the argument that the plain text of 9 U.S.C. § 3 mandates a stay of the entire proceeding, the weight of the available authority (albeit not binding) favors a discretionary approach. Ultimately, the Court need not determine whether such a stay of non-arbitrable claims is required by 9 U.S.C. § 3, because the Court finds that a stay of the Non-Arbitration Plaintiffs' claims is warranted—even if it is merely discretionary—for the reasons set forth below.

     As noted, several courts have found that it is "within a district court's discretion whether to stay . . . an entire action, including issues not arbitrable, pending arbitration." *See Forsyth v. HP Inc.*, 2018 WL 732722 at *3 (N.D. Cal. Feb. 6, 2018) (internal quotations omitted). A discretionary decision to stay (if indeed the decision is discretionary) is properly based on considerations of economy and judicial efficiency. *See id.*; *Lee v. Tesla*, 2020 WL 10573281, *10 (C.D. Cal. Oct. 1, 2020) ("A trial court may grant [such] a stay where it is efficient for [the court's] own docket and

[is] the fairest course for the parties." (internal quotation marks omitted)). Notably, if indeed the decision whether to stay the non-arbitrable claims is one left to the district court's discretion, the district court may make that decision with an eye towards controlling its docket." *See Forsyth*, 2018 WL 732722 at *3 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983)).

The circuits, however, have differed in their approaches to considering a (discretionary) stay of an entire proceeding. Some circuits generally disfavor stays for non-arbitrable claims pending the arbitration of other claims in the action. *See Caytrans BBC, LLC v. Equipment Rental and Contractors Corp.*, 2010 WL 2293001, at *2 (S.D. Ala. June 4, 2010) ("courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation") (internal quotations omitted); *see also Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) ("Stay of the entire proceeding is appropriate when resolution of the arbitrable claim will have a preclusive effect on the nonarbitrable claim or when the arbitrable claims predominant the lawsuit and the nonarbitrable claims are of questionable merit." (internal quotation marks omitted)).

Other courts take a balancing approach. *See Aukema v. Chesapeake Appalachia, LLC*, 839 F. Supp. 2d 555, 559 (N.D.N.Y. 2012) (listing judicial economy factors in determining to whether to grant a stay of non-arbitrable claims); *Guild Mortgage Co. LLC v. Crosscountry Mortgage LLC*, 2022 WL 447672 at *2 (same); *Hikers Industries, Inc. v. William Stuart Industries (Far East) Ltd.*, 640 F. Supp. 175, 178–179 (S.D.N.Y. 1986) (noting "judicial economy," "desirability of avoiding confusion and possible inconsistent results," "insight into issues of law and fact," and furthering "federal policy in favor of arbitration" as weighing in favor of a stay); *Lee*, 2020 WL 10573281 at *10 ("A court may consider the "(1) the economy and efficiency that result from avoiding

duplication of effort; (2) how suited the dispute is to the arbitration process; and (3) the interdependence of the arbitrable claims and the non-arbitrable claims."); *Forsyth*, 2018 WL 732722 at *3 ("the court should weigh the competing interests that will be affected, including: the possible damage which may result from granting the stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay") (internal quotations omitted).

In the Court's view, employing the balancing approach is preferable to entertaining some sort of presumption against staying the non-arbitrable claims. Each case has unique factual and procedural characteristics that the court ought to consider in its decision whether to stay the entire proceeding. Given the scarcity of judicial resources, a presumption against staying the entire proceedings could lead to needless duplication of efforts on the part of the court—and seems particularly inapt when (as here) the plaintiffs voluntarily brought the action together rather than being forced to do so through required joinder. Moreover, in particular cases it may actually be to a non-arbitration plaintiff's (as well as the defendant's) benefit to stay the entire proceeding, as each side potentially could benefit from efficiencies resulting from the arbitration. Taking a holistic approach, therefore, stands to benefit both the judicial system and the parties—and where there may be inefficiencies or prejudice to staying the entire proceeding, the court can choose to forego staying the entire proceedings in federal court.

Turning to the case at hand, there appear to be several common questions of fact among the claims of the various Plaintiffs. The Complaint does not list with specificity which Plaintiffs suffered from (which) particular instances of alleged discrimination. (Doc. No. 1). Instead, the Complaint lumps all Plaintiffs together, implying all Plaintiffs were subject to each alleged

incident of discrimination. Naturally, the arbiter's findings of fact could be of assistance in resolving the Non-Arbitrating Plaintiffs' claims, and in doing so, could prevent duplication of efforts and inconsistent results. Further, the Court does not discern that the Non-Arbitration Plaintiffs will be harmed by the stay.[9] Once the arbitration ends, the Non-Arbitration Plaintiffs will be allowed to go forward with their claims aided by whatever insight (which could be substantial indeed) is to be gained from the happenings in, findings from, or results of the arbitration proceedings.

In summary, judicial economy favors staying the Non-Arbitration Plaintiffs' claims pending resolution of the arbitration.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion (Doc. No. 23) is **GRANTED** in part and **DENIED** in part. Specifically, the Motion is granted in that the Arbitration Plaintiffs shall proceed to arbitration to resolve their claims as requested by Defendant, and the Motion is denied in that the claims of all Plaintiffs are hereby **STAYED** pending arbitration (contrary to Defendant's suggestion that the Arbitration Plaintiffs' claims be dismissed and the Non-Arbitration Plaintiffs' claims be allowed to proceed).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[9] To the extent that the Non-Arbitration Plaintiffs feel otherwise, they should be reminded (i) that it was their choice to join as co-plaintiffs with individuals with arbitration agreements that patently raised a substantial risk that their claims would be stayed; and (ii) such feelings, to the extent validly based on applicable circumstances, could support a colorable motion to dismiss them as plaintiffs without prejudice pursuant to Fed. R. Civ. P. 21.